IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

IN RE: ARLENE KLEMKOWSKI　　　＊　　Case No.: 22-10257 MMH
　　Debtor　　　　　　　　　　　　＊　　Chapter 13
＊　＊　＊　＊　＊　＊　＊　＊　＊　＊　＊　＊　＊
ARLENE KLEMKOWSKI
　　Movant
v.
CITIMORTGAGE, INC.
　　and
CENLAR FSB, SERVICER for
 CITIMORTGAGE, INC.
　　Respondents
＊　＊　＊　＊　＊　＊　＊　＊　＊　＊　＊　＊　＊

**MEMORANDUM IN SUPPORT OF
MOTION TO REQUIRE CREDITOR TO ACCEPT ELECTRONIC PAYMENT**

COMES NOW the Debtor, ARLENE KLEMKOWSKI, by David W. Cohen, Debtor's Attorney, and responsive to this Court's Interim Order, following the hearing on her request for Order pursuant to 11 USC §105, compelling CITIMORTGAGE, INC. and CENLAR, FSB, as servicer for CITIMORTGAGE, INC. and/or their agents, or their successors (collectively "Creditor[1]" or "Servicer") to accept payment by electronic means, says:

PARTIES

This proceeding was initially filed under Chapter 13 on January 19, 2022, at which time Debtor was in arrears to Creditor in the amount of $35,502.90 (Proof of Claim 3). The Debtor's Amended Plan of Reorganization was confirmed on August 18, 2022 and since that time the Debtor has been in compliance with the plan.

Cenlar is identified as a Creditor in the Debtor's petition (Docket 1 at page 19), and filed a proof of claim herein on behalf of Wilmington Trust, NA, f/k/a M&T Bank, S/B/M to

---

[1] Hereafter, the term "Servicer" shall be used, in recognition of the fact that Cenlar FSB is not the owner of the loan, but is instead a contractor retained by the owner of the loan to collect and process payments and other administer the owner's rights under the obligation. The owner of the loan, Citimortgage, Inc., is also a party to this proceeding.

Wilmington Trust, FSB. POC 3 at page 1. In a subsequent pleading, the beneficial interest in the claim was assigned to CitiMortgage, Inc. although Cenlar's address was maintained as the Notice address. Docket 37. Cenlar describes itself as " the largest, longstanding mortgage subservicer in the nation." https://www.cenlar.com/what-we-do/how-we-are-unique . Cenlar has been a principal mortgage subservicer for Citimortgage, Inc.. Since July, 2017 https://www.housingwire.com/articles/39069-heres-how-and-why-citimortgage-is-leaving-mortgage-servicing/ . Cenlar has been subject to a consent order with Office of Comptroller of Currency since October, 2021, which Order includes, *inter alia,* regulation of Default Operations. (See Exhibit "A" at pages 9-10).

## FACTUAL RECORD

Servicer filed a Motion to Modify Stay alleging postpetition default (Docket 42). The Motion alleged, inter alia, that the Debtor failed to make post-petition payments as required under her plan and her general obligation under 11 USC §362 to provide adequate protection.

As indicated in her response (Docket 43), Debtor had attempted to cure the Default In the interest of ensuring that payments are promptly posted, the Debtor attempted to make payment through Servicer's website, which is generally available to borrowers whose loans it services. The Debtor has been unable to do so, as Lender does not accept online payment from borrowers who have sought relief under the Bankruptcy Code. The Debtor has been permitted to make payments by phone as "one time drafts," as set forth on Exhibits A and B to the instant Motion, which are screen shots of the Debtor's bank records.[2] Although Lender verbally issues a confirmation number, it does not provide receipts to borrowers who have sought relief under

---

[2] The Debtor has indicated that she made another payment in November, 2023 but she is not able to use her phone banking application to search back prior to November 16. She has no computer to attempt to search farther.

the Bankruptcy Code. Since the Debtor is not permitted to access the website, she cannot obtain receipts on her own.[3]

The Debtor through Counsel, has requested that Service consent to making its website available, since electronic payment would simplify both payment by the Debtor and proper accounting by Servicer, but this request has been refused.

The Debtor testified that prior to the filing of the petition, she made payments to Servicer through its website, which allowed her to make payment on time or early, and at a time convenient to her work schedule. The website made it possible, among other things, to ensure that the amount she paid was in fact the amount which was due. Upon making the payment, she was able to verify receipt and posting. (Debtor's Affidavit at ¶4)

Once she filed her petition, access to the website was denied. All that appears is an instruction to call Servicer at its toll free number (Debtor's Affidavit at ¶5), which is only available during business hours, which are the same hours that Debtor is at work and unable to use the phone, except during her thirty minute lunch break. The Debtor testified that calls to Servicer were not immediately answered, and that often she was transferred to numerous operators before she could find someone to take her payment. As a result of the delays, she might be required to call several times a month. (Debtor's Affidavit at ¶6) (Although Servicer indicated that it would take payments by mail, the Debtor finds the mail to be unreliable.) Additionally, the Debtor does not receive payment coupons which are reasonably required for Servicer to timely post payment).

---

[3] At the hearing, Servicer introduced letters purportedly mailed to the Debtor evidencing its intent to withdraw funds at a future date. These letters are manifestly not receipts.

In addition to the difficulties in making payment at all, Debtor testified that she cannot receive an indication of how much she is supposed to pay when she calls in. This amount was formerly available both on line and in written statements received in the mail. (Debtor's Affidavit at ¶9) Finally, the Debtor did not receive her tax statement, required to file her 2023 Federal and State returns, in a timely manner and was forced to request extensions. (Debtor's Affidavit at ¶12)

Servicer adduced no evidence as to why it failed to make the online payment system available. Counsel averred that if the Debtor wanted to know the balance, she could ask although, as indicated above, this does not appear to be the case in practice. There is no dispute that Servicer has the ability to maintain an online payment portal and does so for its clientele who have not been required to seek Bankruptcy relief. It is evident, from the filing of Servicer's Motion for Relief, that it knows how to account for pre and post-petition payments, as the law already requires.

In summary, the Debtor wants to make her post-petition payments, and has made significant efforts to do so. Servicer wants to be paid, but has created obstacles to payment for no apparent reason.

## ARGUMENT

Successfully completing a Chapter 13 reorganization is no easy task for a Debtor, In a typical case, the Debtor is required to complete a five year plan with no plan payments, mortgage payments or tax payments missed, while at the same time navigating the vagaries of normal life, which often include unexpected expenses, illness or change in employment status. Estimates of the success rate of Chapter 13 plans vary from 33% to 70%, but every unnecessary obstacle is one too many. The Debtor in this case has asked the Court to require Servicer to

accept payments from her under the same terms and conditions which would apply if she had not sought Bankruptcy relief, and specifically by use of the Servicer's website in the same way that she was permitted (if not encouraged) to pay pre-petition. Servicer has declined to do so.

Debtor and Servicer have both submitted themselves to the jurisdiction of the Court, and the debt in question is being resolved pursuant to the Debtor's confirmed plan. The Debtor seeks relief pursuant to this Court's broad grant of injunctive powers pursuant to 11 USC §105(a), which provides that the Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

A. <u>Servicer's actions are not consistent with applicable non-bankruptcy law</u>

The lender's power to enforce its rights—and, in particular, its right to foreclose on the property in the event of default—is checked by the Bankruptcy Code's automatic stay provision. 11 U.S.C. § 362. See. *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), citing *United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 369-370, 108 S.Ct. 626, 629-630, 98 L.Ed.2d 740 (1988). In exchange, pursuant to a confirmed plan, the Debtor cures pre-petition default. [A] 'cure' merely reinstates a debt to its pre-default position, or it returns the debtor and creditor to their respective positions before the default." Id. at 643. The "core of a 'cure' lies in the maintenance of payments." *Anderson v. Hancock*, 820 F.3d 670, 674 (4th Cir. 2016) (quotations omitted). "Cure by its very nature assumes a regime where debtors reinstate defaulted debt contracts in accordance with the conditions of their contracts." *Litton v. Wachovia Bank, et al.*, 330 F.3d 636, 644 (4th Cir. 2003), cited in *The Farmers Bank of Willards v. Bossler (In re Bossler)*, 22-11568-TJC (Bankr. Md. Sep 21, 2022). During the pendency of the plan, the rights with respect to a default are checked, and the Debtor's position is that, absent a supervening requirement of the Bankruptcy Code, other

controlling statute or regulation, or Order of the Bankruptcy Court, that check applies to all incidents of default. In furtherance of this, this Court's Local Bankruptcy Rule 4001-6 expressly permits a lender to communicate with a debtor postpetition regarding payments due pre- and post-petititon without violating the automatic stay.

Non-Bankruptcy law defines the obligations of a mortgage servicer to a borrower. Specifically, 12 CFR §1026 ("Regulation Z")[4] provides, *inter alia,* at § 1026.41 for the mailing of periodic (i.e. monthly) statements for residential mortgage loans, which must be provided in writing or electronically in a form which a consumer can readily print or download. 12 CFR 1025.41(c). The periodic statement is required to set forth sufficient information for the borrower to understand the status of her loan, specifically:

> (1) Amount due. Grouped together in close proximity to each other and located at the top of the first page of the statement:
>    (i) The payment due date;
>    (ii) The amount of any late payment fee, and the date on which that fee will be imposed if payment has not been received; and
>    (iii) The amount due, shown more prominently than other disclosures on the page and, if the transaction has multiple payment options, the amount due under each of the payment options.
> (2) Explanation of amount due. The following items, grouped together in close proximity to each other and located on the first page of the statement:
>    (i) The monthly payment amount, including a breakdown showing how much, if any, will be applied to principal, interest, and escrow and, if a mortgage loan has multiple payment options, a breakdown of each of the payment options along with information on whether the principal balance will increase, decrease, or stay the same for each option listed;
>    (ii) The total sum of any fees or charges imposed since the last statement; and
>    (iii) Any payment amount past due.
> (3) Past Payment Breakdown. The following items, grouped together in close proximity to each other and located on the first page of the statement:
>    (i) The total of all payments received since the last statement, including a breakdown showing the amount, if any, that was applied to principal, interest,

---

[4] Implementing the Truth in Lending Act("TILA") , 15 USC §1601, *et.seq.*

> escrow, fees and charges, and the amount, if any, sent to any suspense or unapplied funds account; and
>
>> (ii) The total of all payments received since the beginning of the current calendar year, including a breakdown of that total showing the amount, if any, that was applied to principal, interest, escrow, fees and charges, and the amount, if any, currently held in any suspense or unapplied funds account.
>
> (4) Transaction activity. A list of all the transaction activity that occurred since the last statement. For purposes of this paragraph (d)(4), transaction activity means any activity that causes a credit or debit to the amount currently due. This list must include the date of the transaction, a brief description of the transaction, and the amount of the transaction for each activity on the list.

12 CFR §1026.41(d). Again, The disclosure may be made electronically, but it must be made in a form which can be printed.

> Form of the periodic statement. The servicer must make the disclosures required by this section clearly and conspicuously in writing, or electronically if the consumer agrees, and in a form that the consumer may keep.

12 CFR §1026.41(c). Regulation Z exempts servicers from the requirement to send statements to borrowers who have filed for Bankruptcy relief in certain narrow circumstances.

> (5) Certain consumers in bankruptcy —
>
>> (i) Exemption. Except as provided in paragraph (e)(5)(ii) of this section, a servicer is exempt from the requirements of this section with regard to a mortgage loan if:
>>> (A) Any consumer on the mortgage loan is a debtor in bankruptcy under title 11 of the United States Code or has discharged personal liability for the mortgage loan pursuant to 11 U.S.C. 727, 1141, 1228, or 1328; **and**
>>> (B) With regard to any consumer on the mortgage loan:
>>>> (1) The consumer requests in writing that the servicer cease providing a periodic statement or coupon book;
>>>> (2) The consumer's bankruptcy plan provides that the consumer will surrender the dwelling securing the mortgage loan, provides for the avoidance of the lien securing the mortgage loan, or otherwise does not provide for, as applicable, the payment of pre-bankruptcy arrearage or the maintenance of payments due under the mortgage loan;
>>>> (3) A court enters an order in the bankruptcy case providing for the avoidance of the lien securing the mortgage loan, lifting the automatic stay pursuant to 11 U.S.C. 362 with regard to the dwelling securing the mortgage loan, or requiring the servicer to cease providing a periodic statement or coupon book; **or**

> (4) The consumer files with the court overseeing the bankruptcy case a statement of intention pursuant to 11 U.S.C. 521(a) identifying an intent to surrender the dwelling securing the mortgage loan **and** a consumer has not made any partial or periodic payment on the mortgage loan after the commencement of the consumer's bankruptcy case.

12 CFR §1026.41(e). (emphasis added). The word "and" at the end of the first paragraph is critical, because although the Debtor has obviously taken the step set forth at 12 CR §1026.41(e)(5)(i)(A) by seeking relief, none of the events set forth after the "and" at §1026.41(e)(5)(i)(B) have occurred. Accordingly, nothing in non-bankruptcy law permits this service to fail to provide statements to this borrower. This also means that the Borrower's theoretical ability to obtain balance and payment information over the phone is non-compliant

Although an initial payment address and amount were provided in the note underlying Sericer's claim (POC 3 at page 7, ¶3), Servicer's address and website are a "different place" under the meaning of the note. Just as Regulation Z controls the processing of payments by loan servicers, it also controls the receipt and processing of payments;

> (1) Payment processing. In connection with a closed-end consumer credit transaction secured by a consumer's principal dwelling:
> (i) Periodic payments. No servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency, or except as provided in paragraph (c)(1)(iii) of this section. A periodic payment, as used in this paragraph (c), is an amount sufficient to cover principal, interest, and escrow (if applicable) for a given billing cycle. A payment qualifies as a periodic payment even if it does not include amounts required to cover late fees, other fees, or non-escrow payments a servicer has advanced on a consumer's behalf.

12 CFR §1026.36(c). Importantly, nothing under this Chapter of Regulation Z requires or permits a servicer to change the terms of payment upon the filing of a Bankruptcy Petition, just as nothing in the Bankruptcy Code, Bankruptcy Rules of Procedure, the Local Rules or the Debtor's Plan asks for or requires a change.

TILA and Regulation Z are administered under the auspices of the Bureau of Consumer Financial Protection ("CFPB").  CFPB, in its official comment to the payment rule, has stated:

> 2. Payment requirements - Limitations. **Requirements for making payments must be reasonable; it should not be difficult for most consumers and potential successors in interest to make conforming payments**. For example, it would be reasonable to require a cut-off time of 5 p.m. for receipt of a mailed check at the location specified by the servicer for receipt of such check.
>
> 3. Implied guidelines for payments. **In the absence of specified requirements for making payments, payments may be made** at any location where the servicer conducts business; any time during the servicer's normal business hours; and by cash, money order, draft, or other similar instrument in properly negotiable form, or **by electronic fund transfer if the servicer and consumer have so agreed.**

 https://www.consumerfinance.gov/rules-policy/regulations/1026/interp-36/#36-c-1-iii-Interp (Emphasis added).

It is undisputed that prior to the filing of this case, the Servicer offered to accept payments through its website, and the Debtor agreed to make the payments in that manner. Nothing has changed, except for the Servicer's unilateral decision to renege on the agreement. Likewise, it  is undisputed that the Servicer's refusal to accept payments online, together with its failure to make periodic statements and available.

As indicated in testimony, even if not considered part of the relief requested, Servicer has failed to timely provide the Debtor with the IRS form 1098 required for her to file her taxes. Servicer's obligation to provide this document,

> (b) Requirement to furnish statement—(1) In general. An interest recipient that must file a return under paragraph (a) of this section must furnish a statement to the payor of record.
> (2) Information included on statement. An interest recipient must include on the statement that it must furnish to a payor of record:

(i) The information required under paragraph (a)(2) of this section;[5]

26 CFR § 1.6050H-2, is not waived under the Internal Revenue Code or under the Bankruptcy Coder

B.  The Bankruptcy Court has authority to require Servicer to accept on-line payment

Debtor seeks relief from this Court pursuant to its power under 11 USC §105 to issue "ny order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The Fourth Circuit, has opined that the grant of power under Section 105 is broad, and deliberately so:

> A leading commentator on bankruptcy law characterizes section 105 as "an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case. The basic purpose of section 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction." 2 L. King, Collier on Bankruptcy § 105.01, at 105-3 (1996). The second sentence of section 105(a), added in 1986, was expressly intended to broaden the authority of bankruptcy courts to act, sua sponte, to promote the Code's provisions. See 132 Cong. Rec. S15074-05 (Oct. 3, 1986); *In re Haddad*, 68 B.R. 944, 949 (Bankr.D.Mass.1987).

*In re Kestell*, 99 F.3d 146 (4th Cir. 1996). The grant is not unlimited, and cannot be used as an end run around specific limitations in the Bankruptcy Code or otherwise. Thus, the Bankruptcy Court has no power to enjoin prosecution for fraud, even when that fraud was in connection with a pre-petition debt, because the scope of the automatic stay under 11 USC §362 was circumscribed to exempt criminal proceedings. 11 USC §362(b). *Kelly v Robinson,* 476 US 36, 47 (1986), cited by the 4th Circuit in *In re Simonini*, 4th Circuit, *per curiam,* 02-2021, decided Jul 1, 2003, declining to permit the lower court to enjoin prosecution for fraud in connection with bad checks.

---

[5]identifying the payor by name, address, and TIN and setting forth the amount of interest and ecrow reimbursements paid by payor

28 U.S.C. Sec. 1334(b) grants to federal district courts subject matter jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. Sec. 151 in turn designates bankruptcy courts as units of the district courts and 28 U.S.C. Sec. 157(a) defines the scope of bankruptcy courts' jurisdiction. Similar to section 1334(b), section 157(a) grants to bankruptcy courts jurisdiction over "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. Sec. 157(a). *In Re American Hardwoods, Inc.*, 885 F.2d 621, 623 (9th Cir. 1989). Because the Debtor's ability to make post-petition payment as required under her plan affects the viability of the Debtor's reorganization under Chapter 13 and because the subject matter of the Debtor's motion is a specific debt owed to the Respondent which is being adjusted through the case, there is no question that the subject of the Motion is "related to" the underlying case.

The court in *American Hardwoods* discussed the parameters of injunctive power under Section 105

> While endowing the court with general equitable powers, section 105 does not authorize relief inconsistent with more specific law. *In re Golden Plan of California, Inc.*, 829 F.2d 705, 713 (9th Cir.1986) (*Golden Plan* ) ("a bankruptcy court's equitable powers must be strictly confined within the prescribed limits of the Bankruptcy Act."); Johnson v. *First National Bank of Montevideo, Minnesota*, 719 F.2d 270, 273 (8th Cir.1983) cert. denied, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984) ("Although a bankruptcy court is essentially a court of equity, its broad equitable powers may only be exercised in a manner which is consistent with the provisions of the Code.") (citations omitted),.

885 F.2d at 624. As shown above, the relief requested, which is simply that Servicer not burden the Debtor's ability to make the regular periodic post-petition payments required under

the loan documents and the confirmed plan is not only consistent with applicable law but required by such law, and nothing in the Bankruptcy Code prohibits such a result.[6]

C. Conclusion

The relief requested by the Debtor is that she be put in the position to which she is entitled under the Truth in Lending Act and be allowed to receive statements and make payments through the online portal already maintained by Servicer. Granting of the relief reinforces rights which the Debtor already has, and is clearly within the power of this Court, For those reasons, the relief should be granted.

WHEREFORE, Debtor prays this Court:

A.  Issue an Order compelling Respondent, its successors in interest, agents and assignees to accept electronic payment from the Debtor in the same method and under the same conditions that are available to borrowers who have not sought relief under the Bankruptcy Code.

B.  And for such other and further relief as justice and the nature of this cause may require.

RESPECTFULLY SUBMITTED,

  S/ David W. Cohen
David W. Cohen
PO Box 176
Simpsonville, MD 211150
Dwcohen79@jhu.edu
Bar No 03448
410 837-6340
FAX 410-347-7889

---

[6] In contrast, the Debtor in *American Hardwood* sought relief proscribed by the Bankruptcy Code, extending the scope of the discharge to encompass non-debtor guarantors. This relief was denied by the 9th Circuit.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 27 day of May 2024 a copy of the foregoing was served by CM/ECF upon Nikita Joshi, bankruptcy@bww-law.com and upon Adam Kaplan, akaplan@stradley.com counsel for Cenlar, FSB, subservicer for Citimortgage, Inc.; Brian Tucci, Trustee, ecf@ch13balt.com

                                                                                   S/ David W Cohen  
                                                                                  David W. Cohen